SCHOOL DIST. NO. 116 OF MINNEHAHA COUNTY v. GERMAN INS.
CO. OF FREEPORT.

In an action by a school district against an insurance company to recover for the loss of a school house, under a contract of fire insurance containing a representation that the building is used for school and church purposes, and a provision that, if such building be used for any other purpose without the consent of the insurer, or if the risk be increased in any manner, except by the erection and use of ordinary outbuildings, without consent of the company indorsed upon the policy, the same shall be null and void, a motion to direct a verdict for the defendant should be sustained when it is conclusively shown by the undisputed evidence that, without defendant's knowledge or consent, the officers of the district, empowered and authorized to prevent a forfeiture of the policy, have knowingly and habitually permitted the insured building to be used for other than school and church purposes, whereby the risk was greatly increased, and as a direct and immediate result of which the loss of the structure occurred.

(Syllabus by the Court.   Opinion filed Oct. 1, 1895.)

Appeal from circuit court, Minnehaha county. Hon. JOSEPH W. JONES, Judge.

Action to recover on fire insurance policy. Judgment for plaintiff, and defendant appeals. Reversed.

The facts are stated in the opinion.

*G. L. Bunn* and *Davis, Lyon & Gates,* for appellant.

*Hosmer H. Keith,* for respondent.

The question of increase of risk is always one of fact for the jury to determine. Schmidt v. Peoria, 41 Ill. 295; Williams v. Ins. Co., 57 N. Y. 274; Martin v. Ins. Co., 52 N. W. 534. In dealing with an officer of a school district all persons are bound to take notice of his official and fiduciary character, and to know he can only bind his district by contracts authorized by law. Doyle v. Gill, 59 Wis. 518; School v. Padden, 89 Pa. St. 395; State v. School, 22 Neb. 48; School v. Bennett, 52 Ark. 511. The use of a school house for any other than school purposes cannot be authorized. Spencer v. School, 15 Kas. 259; State v. District, 76 Wis. 177; School v. Arnold, 21 Id. 657; Schofield v. School, 27 Conn. 499; Weir v. Day, 35 O. St. 143; Dorton v. Hearn, 67 Mo. 301. Evidence that the negligence of the assured's agent or tenant caused the fire from which the loss arose is inadmissible in defense against an action for such loss on a fire policy. Henderson v. Ins. Co., 43 Am. Dec., 176; Gates v. Madison, 55 Id. 360; Gore v. Ins. Co.; Cumberland v. Douglas, 98 Id. 298; Mickey v. Ins. Co., 14 Am. Rep. 494.

FULLER, J. In the policy of insurance upon which plaintiff brings this action to recover $600, on account of the total destruction by fire of a school house insured by the defendant, it is stipulated that the policy shall be null and void if, without the written consent of the company, the building be used for other than school and church purposes, or if the risk, without such consent, be increased in any manner, except by the erection and use of ordinary outbuildings; and it is further provided in said policy that the insured shall, within 30 days after a fire, furnish sworn proofs of loss which shall state the time, origin and circumstances thereof. The issues of fact presented by the pleadings were tried to jury, and resulted in a verdict against the defendant and in favor of plaintiff for the full amount claimed. From a judgment accord-

ingly entered, and from an order overruling a motion for a new trial, defendant appeals. At the time the schoolhouse was burned, and for some time prior thereto, the basement of said building contained about 90 barrels of unslacked lime, placed there for storage and allowed to remain with the knowledge and without any objection on the part of the school directors and officers of the district, or either of them. In fact, the undisputed evidence shows that, after the building was insured, and for years before the fire occured, the directors, whose business it was to look after and protect the property of the district, consented to allow other parties to store large quantities of unslacked lime in the basement of the school building, and permitted the key to the door and the possession of the basement to be delivered to parties who placed therein and stored car loads of lime on different occasions. When the lime that was in the basement at time of the fire was being placed therein, one of the directors, the chairman of the board, saw it, and upon being informed that the retail dealers of the village had habitually used the basement for that purpose, made no objection, and remarked to the men who were unloading the car that he "guessed it would be all right if the lime was taken out in time to put in the coal." During the night immediately preceding the fire, there was a heavy rainfall, so that persons who visited the fire in the morning saw pools of water standing in front of the door of the basement in which the fire originated, and which at the time was filled with steam, emitted from barrels of lime that had apparently yielded to the force of pressure, and smoke which came from burning timbers just over the barrels, and to which the fire was at that time confined. From the location, surroundings, and plan of the building, as well as from the testimony of witnesses, it clearly appears that rain descending upon the roof would fall upon the ground and run into the basement. In fact, before the making of a very narrow ditch, which was found to be insufficient to carry off the water, the basement was upon several occasions filled with water, so that it remained standing there a foot deep, and after the drain was made the water would extend into the basement six or eight

feet around the door.    It is not only a principle of chemistry, but a matter of common knowledge, that water coming in contact with un- slacked lime, will produce fire, and to that effect the witnesses with- out objection testified.    In no other rational manner can the pres- ence of steam, filling the entire basement before the fire was ob- servable, be accounted for.    Mr. Webster, in defining lime of the character here described, says that "it develops great heat when treated with water."    The undisputed evidence conclusively shows that, without the knowledge or consent of appellant, and by and with the consent and knowledge of the officers of respondent, em- powered and authorized to prevent a forfeiture of the policy, per- sons were habitually permitted to use the building for other than school and church purposes, whereby the risk was greatly in- creased, and as a result of which the building was finally reduced to ashes.    There is no evidence to sustain a verdict and judgment for plaintiff.    The examination of other questions is unnecessary. Appellant's motion to direct a verdict for the defendant, as a mat- ter of law, should have been sustained.    The judgment of the trial court is reversed.